# SUPER LAW GROUP, LLC

February 10, 2022

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Pascap Co., Inc.
4250 Boston Rd.
Bronx, NY 10475

Anthony J. Capasso
4250 Boston Rd.
Bronx, NY 10475

       Re:     Notice of Violation and Intent to File Suit under the Clean Water Act

To Whom It May Concern:

     We are writing on behalf of Riverkeeper, Inc. ("Riverkeeper"),[1] in regard to violations of the Federal Water Pollution Control Act ("Clean Water Act" or the "CWA") that Riverkeeper believes are occurring at the facility located at 4250 Boston Rd., Bronx, NY 10475 ("the Facility").

     This letter is being sent to the above-listed addressees as the responsible owners or operators of the Facility (all recipients are hereinafter collectively referred to as "Pascap"). This letter addresses Pascap's unlawful discharge of pollutants from the Facility into waters of the United States as described below. The Facility is discharging stormwater pursuant to the *New York State Department of Environmental Conservation ["DEC"] SPDES Multi-Sector General Permit for Stormwater Discharges Associated With Industrial Activity*, Permit No. GP-0-12-001 ("2012 Permit") as renewed by Permit No. GP-0-17-004 ("2018 Permit"). The 2012 Permit was in effect between October 1, 2012, and September 30, 2017, and the 2018 Permit went into effect on March 1, 2018, and will expire on February 28, 2023.[2] As explained below, the 2018 Permit maintains or makes more stringent the same requirements as the 2012 Permit. As appropriate, Riverkeeper will refer to the 2012 Permit and the 2018 Permit in this letter collectively as the "General Permit." The Facility is engaged in ongoing violations of the substantive and procedural requirements of the General Permit.

---

[1] Riverkeeper, Inc. is a not-for-profit environmental organization existing under the laws of the state of New York, headquartered in Ossining, New York. Riverkeeper's mission includes safeguarding the environmental, recreational and commercial integrity of the Hudson River and its ecosystem, as well as the watersheds that provide New York City with its drinking water. Riverkeeper achieves its mission through public education, advocacy for sound public policies, and participation in legal and administrative forums. Riverkeeper has more than 3,800 members, many of whom reside near to, use, and enjoy the Hudson River and the waters and tributaries of the Hudson River, New York Harbor, and the Hutchinson River.

[2] Despite this apparent gap, DEC considers that facilities subject to the 2012 Permit maintained their permit coverage subject to those facilities submitted a proper Notice of Intent to be governed by the terms of the 2018 Permit.

To address Pascap's violations of the Clean Water Act, Riverkeeper intends to file suit in federal court, as an organization and on behalf of its adversely affected members, seeking appropriate equitable relief, civil penalties, and other relief no earlier than 60 days from the postmark date of this letter, pursuant to Section 505(a) of the federal Clean Water Act.[3]

# I.

## BACKGROUND AND ACTIVITIES ALLEGED TO CAUSE VIOLATIONS

### A.    Pollution Exposure at Scrap Metal Yards.

Metal recycling facilities, especially those with outdoor stockpiling, processing and segregation of materials, have been identified as a major source of stormwater contamination. Scrap metal in different stages of corrosion and decay may release a variety of harmful substances, including but not limited to heavy metals, fuel, oil, lubricants, polychlorinated biphenyls, grease, lead acid, lead oxides, chlorinated solvents, asbestos, ethylene glycol, paint, and chemical residues.[4]

In addition to the storage and processing of various sources of scrap metal, such facilities also engage in vehicle operation and maintenance and equipment operation and storage.  Fork lifts, trucks, and other vehicles track debris, particulate matter, and other contaminants to areas on and off the premises.  Vehicles also expose many other sources of pollution to the elements, including gasoline, diesel fuel, anti-freeze, battery fluids, and hydraulic fluids.

The types of pollutants that are released into the immediate environment by scrap metal and metal processing activities include, among those listed above: toxic metals such as aluminum, copper, iron, lead, zinc, mercury, and cadmium; petroleum products including oil, gasoline, grease, and diesel fuel; battery fluids, acids and solvents; and total organic carbon, suspended solids, and pH-altering substances.  Other significant materials present at scrap metal facilities, such as the Pascap Facility, include mineral spirits, kerosene, paint thinner, water-based machine cutting fluid, waste sand, and machine shop filings.

### B.    The Facility.

The permit identification number for the Facility on documents submitted to the DEC is NYR00B708.  On its Notice of Intent for Stormwater Discharges Associated with Industrial Activity under the State Pollutant Discharge Elimination System (SPDES) Multi-Sector General Permit GP-0-17-004 ("NOI"), Pascap certifies that the Facility is classified under Standard

---

[3] *See* 40 C.F.R. § 135.2(a)(3)(c) (notice of intent to file suit is deemed to have been served on the postmark date).
[4] 60 Fed. Reg. 50804, 50953–63 (listing common pollutants associated with Sector N—scrap and waste recycling facilities—as of 1995); *see also* id. at 51189–97 (outlining special requirements for Sector N); EPA, *Industrial Stormwater Fact Sheet Series: Sector N*, EPA-833-F-06-029, at 2–4 (Feb. 2021), https://www.epa.gov/sites/production/files/2015-10/documents/sector_n_scraprecycling.pdf [hereinafter *Sector N Fact Sheet*] (listing common pollutants associated with Sector N, as of 2021).

Industrial Classification ("SIC") Code 5093 (Sector N3[5]).  It collects and discharges stormwater from its 8.3-acre industrial site through at least one discharge location.  Pascap certifies that the receiving water for this facility is the Hutchinson River.  On information and belief, Riverkeeper alleges that the discharge location contains stormwater that is commingled with runoff from the Facility from areas where industrial processes occur.

Pascap has certified that the Facility is classified under SIC Code 5093, meaning that it is primarily engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials.  The majority of activity and storage at each Facility takes place outdoors, where pollutants are exposed to stormwater.  Riverkeeper believe that the Facility releases pollutants of the kinds described above, in Section I.A of this letter.

Information available to Riverkeeper, including Pascap's reports filed with the DEC, indicates that Pascap has failed to develop and/or implement sufficient stormwater management practices and/or structural controls ("best management practices" or "BMPs") at the Facility to prevent stormwater flows from coming into contact with the sources of contaminants at the Facility and prevent the discharge of pollutants.  Riverkeeper alleges that the Facility lacks sufficiently well-maintained structural controls and practices to minimize exposure of pollutants to stormwater, retain all stormwater on site, or prevent contaminants from entering into stormwater.

Riverkeeper also alleges that Pascap does not sufficiently treat contaminated stormwater prior to discharge from the Facility.  In addition, the large number of trucks and other vehicles entering and leaving the Facility from the driveway track pollutants off-site onto public streets where rainfall washes these pollutants into storm drains that discharge into waters of the United States.

Further, information available to Riverkeeper indicates that Pascap has failed to develop and/or implement an adequate Stormwater Pollution Prevention Plan ("SWPPP") and monitoring and reporting programs at the Facility.  As a result, the discharges of stormwater associated with industrial activity from the Facility are not in accordance with the effluent limitations contained in the General Permit, and Pascap is therefore violating Sections 301 and 402 of the Clean Water Act.

### C.     Waters Receiving the Facility's Discharges.

With every significant rainfall event, millions of gallons of polluted stormwater originating from industrial operations such as the Pascap Facility pour into storm drains and local waterways.  In most of New York, stormwater flows untreated, either directly or through municipal storm drain systems, into creeks, rivers, and other receiving waters.  Stormwater pollution accounts for the majority of the pollution entering the environment each year.  Stormwater pollution poses a health risk to humans, harms aquatic life, closes beaches,

---

[5] Sector references in this letter refer to specific sectors as defined in the General Permit.

Notice of Violation and Intent to File Suit
February 10, 2022
Page 4 of 21

contaminates rivers and lakes, and harms the environment.  These contaminated stormwater discharges can and must be controlled for ecosystems to regain their health.

Stormwater discharges flow from the Facility directly into the Hutchinson River.  DEC has classified the Hutchinson River, at the point(s) where the Facility discharges, as a Class SB water.[6]  Under New York's Water Quality Standards, a waterbody that is designated Class SB is meant to be suitable as for primary and secondary contact recreation, fishing, and for fish, shellfish, and wildlife propagation and survival.[7]

The New York Water Quality Standards also set numeric and narrative criteria for different water pollution parameters including dissolved oxygen, oil and grease, suspended and settleable solids, bacteria (pathogens), pH, temperature, nutrients, and others.[8]  A waterbody must meet these numeric and narrative criteria in order to support its designated uses.[9]

The Hutchinson River consistently fails to meet state water quality standards; illegal stormwater discharges from this Facility contribute to this failure.[10]  DEC has designated the lower portion of the Hutchinson River and its tributaries as impaired pursuant to CWA Section 303(d)[11] for low dissolved oxygen and garbage and refuse.[12]

## II.

## STANDARDS AND LIMITATIONS ALLEGED TO HAVE BEEN VIOLATED AND ACTIVITIES ALLEGED TO CAUSE VIOLATIONS

The Clean Water Act provides that "the discharge of any pollutant by any person shall be unlawful" unless the discharger is in compliance with the terms of a NPDES permit.[13]  The Facility discharges stormwater pursuant to the General Permit, which authorizes stormwater discharges conditioned on the Facility's compliance with the terms of the General Permit.  Each permit terms constitutes an "effluent limitation" within the meaning of CWA section 505(f), 33 U.S.C. § 1365(f).  Pascap must comply at all times with the basic requirements of the General Permit, along with the specific requirements for sector N.[14]  Information available to Riverkeeper

---

[6] 6 N.Y.C.R.R. § 935.6.

[7] 6 N.Y.C.R.R. § 701.11.

[8] *See generally* 6 N.Y.C.R.R. §§ 702, 703 (outlining quantitative and qualitative standards, respectively).

[9] *See generally* Division of Water Technical and Operational Guidance Series, *Ambient Water Quality Standards and Guidance Values and Groundwater Effluent Limitations*, N.Y. DEP'T ENVTL. CONSERVATION, (June 1998), http://www.dec.ny.gov/docs/water_pdf/togs1112.pdf [hereinafter *TOGS*].

[10] *See Section 303(d) List of Impaired Waters Requiring a TMDL/Other Strategy*, N.Y. DEP'T ENVTL. CONSERVATION, 31 (June 2020), https://www.dec.ny.gov/docs/water_pdf/section303d2018.pdf [hereinafter "*303(d) List*"].

[11] 33 U.S.C. § 1313(d).

[12] *303(d) List*, at 31.

[13] CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities).

[14] 2018 Permit, Part VII, Appx. H.1; 2012 Permit, Parts V.A, VIII; *See also* 6 N.Y.C.R.R. § 750-2.1(e) ("Any [SPDES] permit noncompliance constitutes a violation of the Environmental Conservation Law and the Clean Water

indicates that the Facility's stormwater discharges and stormwater management practices have violated several of these permit terms, thereby violating CWA effluent limitations and CWA § 301(a).[15]

### A. Pascap is Violating the CWA and the General Permit by Failing to Implement Adequate Control Measures.

The Clean Water Act requires Pascap to use stormwater pollution control measures that reflect, and prohibit the discharge of pollutants above the level that is commensurate with application of the best available technology economically achievable ("BAT"), which applies to toxic and non-conventional pollutants, and best conventional pollutant control technology ("BCT") for conventional pollutants.[16]

The General Permit implements these federal standards by imposing effluent limitations that require Pascap to adopt both general and sector-specific control measures in order to minimize the discharge of pollutants from the Facility.[17]  The General Permit defines *minimize* as requiring operators to "reduce and/or eliminate to the extent achievable using control measures [including BMPs] … that are technologically available and economically practicable and achievable in light of best industry practice."[18]

The General Permit sets forth non-numeric technology based effluent limits, grouped into twelve categories, with which Pascap must comply[19]:

1. "Minimize Exposure" – This includes measures operators must take to prevent industrial activities and materials (manufacturing, processing, and material storage) from exposure to rain, snow, snowmelt, and runoff.

2. "Good Housekeeping" – This includes measures operators must take to "keep clean all exposed areas that are potential sources of pollutants."

3. "Maintenance" – Operators "must maintain all industrial equipment and systems and control measures in effective operating condition."

---

Act and is grounds for: enforcement action; for permit suspension, revocation or modification; and for denial of a permit renewal application.").

[15] 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p).

[16] CWA §§ 304(b)(2), (4); 33 U.S.C. § 1314(b)(2), (4).  Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand, and fecal coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional. *Id*.; 40 C.F.R. § 401.15.

[17] 2018 Permit, Part II (setting general requirements for all operators); Part VII (setting forth sector-specific requirements); 2012 Permit, Part I.B (setting general requirements for all operators); Part VIII (setting forth sector-specific requirements).

[18] 2018 Permit, Part II; 2012 Permit, Part B.1.

[19] 2018 Permit, Parts II.A.1-A.12; *See also* 2012 Permit, Part I.B.2.

4. "Spill Prevention and Response Procedures" – Operators "must minimize the potential for leaks, spills and other releases that may be exposed to stormwater and develop plans for effective response to such spills if or when they occur in order to minimize pollutant discharges."

5. "Erosion and Sediment Controls" – Operators "must stabilize exposed areas and control runoff using structural and/or non-structural control measures to minimize onsite erosion and sedimentation."

6. "Management of Runoff" – Operators "must divert, infiltrate, reuse, contain, or otherwise reduce stormwater runoff, to minimize pollutants in the discharges."

7. "Salt Storage Piles or Piles Containing Salt" – Operators must enclose or cover piles of salt and minimize exposure resulting from adding or removing to the piles.

8. "Employee Training" – Operators must thoroughly train, annually, "all employees who work in areas where industrial materials or activities are exposed to stormwater," or who are responsible for implementing activities necessary to meet the requirements of the General Permit.

9. "Non-Stormwater Discharges" – These must be eliminated unless authorized by a SPDES permit.

10. "Waste, Garbage and Floatable Debris" – Operators "must ensure that waste, garbage, and floatable debris are not discharged to surface waters of the state by keeping exposed areas free of such materials or by intercepting them before they are discharged."

11. "Dust Generation and Vehicle Tracking of Industrial Materials" – Operators must minimize generation of dust and off-site tracking of raw, final, or waste materials in order to minimize the pollutant discharges."

12. "Secondary Containment" – Operators "must ensure that compliance is maintained with all applicable regulations including, but not limited to, those involving releases, registration, handling and storage of petroleum, chemical bulk and hazardous waste storage facilities."

The General Permit sets forth additional non-numeric effluent limits based on a particular facility's sector. For facilities in Sector N-3, these additional requirements include, *inter alia*, the development and implementation of a program to control what is received at a facility, the installation of oil/water separators, sumps and dry adsorbents for areas where potential source residual fluids are stockpiled, measures necessary to minimize contact of surface runoff with

Notice of Violation and Intent to File Suit
February 10, 2022
Page 7 of 21

residual cutting fluids, and BMPs to minimize surface runoff from coming in contact with scrap processing equipment.[20]

For facilities in Sector N, the General Permit establishes the following benchmarks: total suspended solids ("TSS") – 100 mg/L, chemical oxygen demand ("COD") – 120 mg/L, oil and grease ("O&G") – 15 mg/L, total recoverable aluminum – 750 ug/L, total recoverable cadmium – 1.8 ug/L, total chromium – 1.8 mg/L, total recoverable copper – 12 ug/L, total recoverable iron – 1 mg/L, total recoverable lead – 69 ug/L, total recoverable zinc – 110 ug/L.[21]

"Benchmark Monitoring is intended to provide a guideline for the owner or operator to determine the overall effectiveness of the SWPPP in controlling the discharge of pollutants to receiving waters."[22]  Exceedance of a benchmark requires an owner or operator of a facility "to evaluate potential sources of stormwater contaminants at the facility and perform corrective actions."[23]  Thus, the benchmarks are guidelines for determining whether a facility has implemented the requisite BAT/BCT level of control measures.  As described below, stormwater samples from the Facility show numerous exceedances of the benchmarks.

The Facility has discharged and continues to discharge stormwater with unacceptable levels of aluminum, chemical oxygen demand (COD), copper, iron, lead, and zinc that exceed the applicable benchmarks.  These exceedances are further evidence of Pascap's failure to implement adequate control measures that meet the required BAT/BCT standard.  Self-monitoring reports under the General Permit are deemed "conclusive evidence of an exceedance of a permit limitation."[24]

The information below in Figure 1 reflects data gathered from the Facility's discharge monitoring reports ("DMRs")[25] and information submitted to the United States Environmental Protection Agency ("EPA").  These discharges of pollutants from the Facility are evidence of ongoing violations of the non-numeric effluent limitations set forth in the General Permit.  Riverkeeper alleges that discharges from the Facility have exceeded and continue to exceed the benchmarks for aluminum, chemical oxygen demand (COD), copper, iron, lead, and zinc.

### Figure 1:  Pascap's Self-Reported Benchmark Exceedances

| Pollutant | Sampling Period | Benchmark | Observed Concentration | Outfall |
|---|---|---|---|---|
| Aluminum | 2020 Period 2 | 750 µg/L | 804 µg/L | 001 |
| Chemical Oxygen Demand (COD) | 2017 Annual | 120 mg/L | 59,000 mg/L | 001 |

---

[20] 2018 Permit, Part VII.N; 2012 Permit, Part VIII.N.
[21] 2018 Permit, Table VII-N-2; 2012 Permit, Table VIII-N-2.
[22] 2018 Permit, Part IV.F.1; *See also* 2012 Permit, Part IV.B.1.c.5.a.
[23] 2018 Permit, Part IV.F.3; *See also* 2012 Permit, Part IV.B.1.c.6.
[24] *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988), *vacated on other grounds*, 485 U.S. 931 (1988).
[25] The DMRs are a form of self-monitoring reports.

Notice of Violation and Intent to File Suit
February 10, 2022
Page 8 of 21

| Copper | 2021 Period 2 | 12 µg/L | 78.63 µg/L | 001 |
|--------|---------------|---------|------------|-----|
| Copper | 2021 Period 1 | 12 µg/L | 90.42 µg/L | 001 |
| Copper | 2020 Period 2 | 12 µg/L | 33.48 µg/L | 001 |
| Copper | 2020 Period 1 | 12 µg/L | 91.47 µg/L | 001 |
| Copper | 2019 Period 2 | 12 µg/L | 48.83 µg/L | 001 |
| Copper | 2019 Period 1 | 12 µg/L | 55.69 µg/L | 001 |
| Copper | 2017 Annual | 12 µg/L | 42.59 µg/L | 001 |
| Iron | 2021 Period 2 | 1 mg/L | 1.21 mg/L | 001 |
| Iron | 2021 Period 1 | 1 mg/L | 1.71 mg/L | 001 |
| Iron | 2020 Period 2 | 1 mg/L | 1.05 mg/L | 001 |
| Iron | 2020 Period 1 | 1 mg/L | 3.4 mg/L | 001 |
| Iron | 2019 Period 2 | 1 mg/L | 1.01 mg/L | 001 |
| Iron | 2019 Period 1 | 1 mg/L | 1.09 mg/L | 001 |
| Iron | 2018 Period 2 | 1 mg/L | 5.35 mg/L | 001 |
| Iron | 2017 Annual | 1 mg/L | 1.06 mg/L | 001 |
| Lead | 2021 Period 2 | 69 µg/L | 102.6 µg/L | 001 |
| Lead | 2021 Period 1 | 69 µg/L | 101.1 µg/L | 001 |
| Lead | 2020 Period 2 | 69 µg/L | 194 µg/L | 001 |
| Lead | 2019 Period 2 | 69 µg/L | 74.09 µg/L | 001 |
| Zinc | 2021 Period 2 | 110 µg/L | 499.2 µg/L | 001 |
| Zinc | 2021 Period 1 | 110 µg/L | 735.5 µg/L | 001 |
| Zinc | 2020 Period 2 | 110 µg/L | 660 µg/L | 001 |
| Zinc | 2020 1st Half | 110 µg/L | 1,178 µg/L | 001 |
| Zinc | 2019 Period 2 | 110 µg/L | 382.4 µg/L | 001 |
| Zinc | 2019 1st Half | 110 µg/L | 706.2 µg/L | 001 |
| Zinc | 2017 Annual | 110 µg/L | 846.2 µg/L | 001 |

Riverkeeper's review of documents submitted to DEC, as well as the analytical results documenting pollutant levels in stormwater discharges from the Facility well in excess of applicable benchmarks, indicate that Pascap has not developed and/or implemented sufficient control measures to minimize the exposure of pollutants to stormwater, minimize the discharge of pollutants from the Facility, and comply with the non-numeric technology based effluent limits in the General Permit.  This is further underscored by Riverkeeper's investigation of the Facility, revealing significant track-out of materials on roadways adjacent to the Facility.[26] Accordingly, Pascap has not developed and/or implemented adequate pollution controls to meet the federal BAT/BCT standard or comply with the General Permit's non-numeric technology based effluent limits at the Facility.  Pascap has violated and will continue to violate the General Permit and the Clean Water Act on each and every day that it fails to develop and/or implement adequate pollution controls.  Each discharge of stormwater from the Facility that is not subject to

---

[26] See 2018 Permit, Part I.A.11 (operators must "minimize generation of dust and off-site tracking of raw, final, or waste materials in order to minimize the pollutant discharges."); 2012 Permit, Part I.B.1.a.(2).(l) (same).

adequate pollution controls constitutes a separate violation of the General Permit and the Clean Water Act.

**B.      Pascap is Violating the General Permit's Water Quality Based Effluent Limitations.**

The General Permit prohibits any discharge that may cause or contribute to a violation of New York's water quality standards.  Water Quality Based Effluent Limitation II.C.1.a of the 2018 Permit states that "[i]t shall be a violation of the Environmental Conservation Law (ECL) for any discharge authorized by this general permit to either cause or contribute to a violation of water quality standards as contained in 6 NYCRR Parts 700-705."[27]  Water Quality Based Effluent Limitation II.C.1.c of the 2018 Permit holds that "any discharge which contains a visible sheen, foam, or odor, or may cause or contribute to a violation of water quality is prohibited."

The DEC has established a general condition that "[t]he discharge of sewage, industrial waste or other wastes shall not cause impairment of the best usages of the receiving water as specified by the water classifications at the location of discharge and at other locations that may be affected by such discharge."[28]  The DEC has established water quality standards for Class SB waters.

6 NYCRR Section 703.5 establishes water quality standards for taste-, color- and odor-producing, toxic and other deleterious substances.  Table 1 lists the water quality standards that are applicable based on the particular class of water body.[29]  For water bodies with a designation of Class SB, Table 1 provides the water quality standard for copper of 4.8 ug/L for Aquatic (Acute) ("A(A)").  Riverkeeper alleges that discharges from the Facility are causing or contributing to violations of New York's water quality standards.  The discharges listed above in Figure 1 have contained measurements of copper in excess of the applicable water quality standard for Copper (A(A)) established by DEC for Class SB waters.

Pascap has violated and will continue to violate the General Permit and the Clean Water Act on each and every day that it discharges stormwater containing any copper at levels exceeding the above specified threshold.  Each such discharge from the Pascap Facility constitutes a separate violation of the General Permit and the CWA.

**C.      Pascap is Violating the General Permit's SWPPP Requirements.**

The General Permit requires that facilities develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with general requirements as well as sector-specific requirements.[30]  Part III of the 2018 Permit requires that "[t]he SWPPP documents the practices

---

[27] *See also* 2012 Permit, Part I.B.2.
[28] 6 N.Y.C.R.R. § 701.1.
[29] 6 N.Y.C.R.R. § 703.5.
[30] 2018 Permit, Part I.D.a.1; 2012 Permit, Part I.E.2.

Notice of Violation and Intent to File Suit
February 10, 2022
Page 10 of 21

and procedures to ensure compliance with the conditions of this permit, including the selection, design, installation and maintenance of control measures selected to meet effluent limitations in Parts II and VII."[31]  Among other things, the SWPPP must include: information related to a facility's stormwater pollution prevention team; a general site description; a summary of potential pollutant sources; measures related to handling of spills and releases; a general location map and a site map identifying the location of the facility and all receiving waters to which stormwater discharges; a description of control measures and best management practices; schedules and procedures for implementation of control measures, monitoring and sampling, and inspections; and documentation of inspections, samples, and corrective actions taken at the facility.[32]

The General Permit also includes sector-specific SWPPP requirements.  For facilities in Sector N, these requirements include, *inter alia*, a program to control materials received for processing; BMPs to minimize contact of particulate matter stored indoors or under cover from contacting surface runoff; BMPs to minimize contact of stormwater runoff with stockpiled materials, processed materials, and non-recyclable wastes; BMPs to minimize contact of residual liquids and particulate matter from materials stored indoors or under cover from coming in contact with surface runoff; a program to control what is received at the facility; measures necessary to minimize contact of surface runoff with residual cutting fluids; BMPs to minimize surface runoff from coming in contact with scrap processing equipment; and measures to minimize stormwater contamination at loading/unloading areas.[33]

In addition, for facilities discharging to impaired waterbodies for which the cause of the impairment is a pollutant of concern included in the benchmarks as set forth in Appendix G of the 2018 Permit, a facility must contain the following SWPPP requirements: identification of the impaired waterbody, a list of pollutants of concern that could be discharged causing the impairment, an identification of each area of the facility that generates stormwater discharges associated with industrial activity that creates a reasonable potential to discharges the pollutants of concern, and specific BMPs to minimize the pollutant of concern from being discharged to the impaired waterbody.[34]

On information and belief, Riverkeeper alleges that the SWPPP for the Facility does not include, and that Pascap has not implemented, the required minimum and industry specific control measures necessary to reduce pollutant levels in discharges to BAT and BCT levels. This is evidenced by sources of stormwater contamination at the Facility, contaminant tracking around and off the Facility, and the Facility's discharges of stormwater with pollutants at levels that exceed applicable benchmark concentrations and water quality standards.  Pascap's failures to prepare and/or implement an adequate SWPPP in all the above respects constitute ongoing violations of Part III the 2018 Permit.

---

[31] *See also* 2012 Permit, Part III.A.
[32] 2018 Permit, Part III.A; 2012 Permit, Part III.C.
[33] 2018 Permit, Part VII.N; 2012 Permit, Part VIII.N.
[34] 2018 Permit, Part III.D.2.a-d.

Notice of Violation and Intent to File Suit
February 10, 2022
Page 11 of 21

Further, the General Permit requires Pascap to keep the SWPPP current by amending it whenever there are changes in design, construction, operation or maintenance at the Facility that affect the potential to discharge pollutants, or whenever a SWPPP is found to be ineffective in eliminating or significantly minimizing pollutants.[35]  The continuing exceedances of benchmark monitoring cut-off concentrations from the Facility indicate that such amendments have not been made or have been inadequate.

Pascap's failures to prepare and/or implement an adequate SWPPP in the above respects constitute violations of the General Permit.  Riverkeeper puts Pascap on notice that it violates the General Permit and the CWA every day that the Facility operates with an inadequately developed, implemented, and/or revised SWPPP.  These violations are ongoing, and Riverkeeper will include additional violations as information and data become available.

D.     **Failures to Take Sufficient Corrective Actions in Response to Stormwater Discharge Sample Results.**

When stormwater discharges from a facility have high levels of pollutants that exceed applicable concentrations, limits, and standards, the General Permit requires operators to take "corrective actions" to improve BMPs to eliminate those exceedances.  Part V.A of the 2018 Permit requires these corrective actions when, *inter alia*, "the benchmark or numeric effluent limit [stormwater] sample results indicate exceedances of the pollutants."[36]  A discharger must implement additional structural and non-structural BMPs to prevent a recurrence of those exceedances within 12 weeks.[37]  If the exceedances still continue, the discharger must continue implementing additional BMPs.[38]  Corrective actions are also required if there is evidence indicating that stormwater discharges "are causing, have the reasonable potential to cause, or are contributing to a violation of the water quality standards."[39]  A failure to take the necessary and required corrective actions is a violation of the permit.[40]

On information and belief, Riverkeeper alleges that Pascap has failed to implement sufficient corrective actions as evidenced by the Facility's continued stormwater sample results with exceedances of applicable benchmarks and with the reasonable potential to cause or contribute to a violation of water quality standards.

Riverkeeper puts Pascap on notice that its failures to implement corrective actions are violations of the General Permit and the CWA.  Pascap is in ongoing violation of the corrective actions requirements in the General Permit every day the Facility operates without implementing sufficient corrective actions.  Each of these violations is a separate and distinct violation of the General Permit and the CWA.

---

[35] 2018 Permit, Part III.E; 2012 Permit, Part III.E.
[36] *See also* 2012 Permit Parts IV.B.1.c.(6).(a)-(b), IV.B.1.e.(5).(a)-(b)
[37] 2018 Permit, Part V.A.1; 2012 Permit, Part III.E.2.b.(1).
[38] 2018 Permit, Part V.A.4; 2012 Permit, Parts IV.B.1.c.(6).(d).(iii), IV.B.1.e.(5).(e).(iii).
[39] 2018 Permit, Part II.C.1.b; *See also* 2012 Permit, Part I.B.3.
[40] 2018 Permit, Parts V, II.C.1.b; 2012 Permit, Parts IV.B.1.c.(6).(d).(iii), IV.B.1.e.(5).(e).(iii).

Notice of Violation and Intent to File Suit
February 10, 2022
Page 12 of 21

### III.

### PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS

Pascap Co., Inc. and Anthony J. Capasso (collectively, "Pascap") are the persons responsible for the violations alleged in this Notice.  Riverkeeper believes that Pascap has operational control over the day-to-day industrial activities at the Facility.  Pascap Co., Inc. is the person identified as the owner/operator of the Facility on the Facility's Notices of Intent.  Therefore, Pascap is responsible for managing stormwater at the Facility in compliance with the CWA.  Riverkeeper hereby puts Pascap notice that, if Riverkeeper subsequently identifies additional persons as also being responsible for the violations set forth above, Riverkeeper intends to include those persons in this action.

### IV.

### LOCATION OF THE ALLEGED VIOLATION

The violations alleged in this Notice have occurred and continue to occur at the facility located at 4250 Boston Rd., Bronx, NY 10475 (the "Facility").  The failure to develop and implement an adequate SWPPP and take the other required measures are violations occurring at the Facility in general and in the inadequate documents themselves.[41]

### V.

### DATES OF VIOLATION

Every day upon which Pascap has operated the Facility and discharged polluted stormwater not in compliance with a permit is a separate violation of CWA Sections 301(a) and EPA's implementing regulations.[42]

First, each day upon which Pascap operates the Facility without adequate BMPs or an adequate SWPPP constitutes a separate day of violation with respect to each unmet condition of the General Permit related to particular BMPs and the SWPPP.  Riverkeeper alleges that these violations have occurred since February 10, 2017 and are continuing.

Second, Pascap has discharged pollution in violation of the General Permit and CWA Section 301(a) on every day since Pascap commenced industrial operations at the Facility on

---

[41] The federal courts have held that a reasonably specific indication of the area where violations occurred, such as the name of the facility, is sufficient and that more precise locations need not be included in the notice.  *See, e.g.*, *NRDC v. Sw. Marine, Inc.,* 945 F. Supp. 1330, 1333 (S.D. Cal. 1996), *aff'd* 236 F.3d 985, 996 (9th Cir. 2000); *City of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 900, 908 (S.D.N.Y. 1995); *United Anglers v. Kaiser Sand & Gravel Co.*, No. C 95-2066 CW, 1995 U.S. Dist. LEXIS 22449 at *4 (N.D. Cal. Sept. 27, 1995).
[42] *See* 33 U.S.C. §§ 402(p)(3)(A) and (p)(4)(A) (requiring the establishment of industrial stormwater NPDES permits and of a permit application process).

which there has been a measurable precipitation event or discharge of previously accumulated precipitation (i.e., snowmelt) over 0.1 inches.[43]  Figure 1 sets forth specific rain dates on which Riverkeeper alleges that the Facility discharged stormwater without adequate pollution control measures in violation of CWA Section 301(a) and the General Permit.  The second column shows precipitation.  Riverkeeper alleges that the Facility discharged stormwater on each day of these events, as either 0.1 inch of rain or 1.0 inch of snow (shown here in water-equivalent inches) fell on these days.  The third column shows snow depth.  Riverkeeper alleges that the Facility discharged stormwater on at least one day following each day of accumulation greater than 1.0 inch.  This list of dates is not exclusive, and Riverkeeper hereby notifies Pascap that Riverkeeper intends to take legal action regarding any other days on which Riverkeeper later learns that Pascap discharged pollutants from the Facility.  In sum, Riverkeeper alleges that Pascap has violated the General Permit and the CWA by discharging stormwater without adequate pollution control measures on 461 days from Febraury 10, 2017 to January 20, 2022 and that these violations are continuing.

Third, Pascap has violated the General Permit and the Clean Water Act each time it has discharged stormwater with copper in excess of the applicable water quality standards for copper (A(A) established by DEC for Class SB waters.  Riverkeeper alleges that these violations have occurred during every rain event since February 10, 2017, and are continuing.

Fourth, every day that Pascap operates without implementing sufficient corrective actions is a separate day of violation with respect to the General Permit and the Clean Water Act.  Riverkeeper alleges that these violations have occurred on every day since February 10, 2017, and are continuing.

**Figure 1:  NOAA Precipitation Data, February 10, 2017 through January 20, 2022[44]**

| Date | Precip. | Snow | Date | Precip. | Snow | Date | Precip. | Snow |
|---|---|---|---|---|---|---|---|---|
| 2/10/17 | 0 | 7.9 | 3/7/17 | 0.1 | 0 | 3/18/17 | 0.07 | 3.9 |
| 2/11/17 | 0 | 5.9 | 3/10/17 | 0.24 | 2.4 | 3/19/17 | 0 | 3.1 |
| 2/12/17 | 0.42 | 2 | 3/11/17 | 0 | 1.2 | 3/20/17 | 0 | 2 |
| 2/13/17 | 0.01 | 1.2 | 3/14/17 | 1.03 | 7.4 | 3/26/17 | 0.12 | 0 |
| 2/25/17 | 0.32 | 0 | 3/15/17 | 0 | 7.1 | 3/27/17 | 0.2 | 0 |
| 3/1/17 | 0.12 | 0 | 3/16/17 | 0 | 5.9 | 3/28/17 | 0.65 | 0 |
|  |  |  | 3/17/17 | 0 | 5.1 | 3/31/17 | 2.1 | 0 |

[43] EPA has determined that precipitation greater than 0.1 inches in a 24-hour period constitutes a measurable precipitation event for the purposes of evaluating stormwater runoff associated with industrial activity.  *See, e.g.*, 40 C.F.R. § 122.26(c)(i)(E)(6) (using 0.1 inches as the distinguishing threshold of a storm event).

[44] The rain dates in the table are all the days when 0.1 inch or more rain was observed at the nearest weather station to the Facility.  Rain data was accessed from the National Oceanic and Atmospheric Administration.  *Climate Data Online Search*, NAT'L OCEANIC & ATMOSPHERIC ADMIN., https://www.ncdc.noaa.gov/cdo-web/search (last visited February 4, 2022).

Notice of Violation and Intent to File Suit
February 10, 2022
Page 14 of 21

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4/4/17 | 1.6 | 0 | 9/2/17 | 0.59 | 0 | 1/10/18 | 0 | 3.1 |
| 4/6/17 | 0.85 | 0 | 9/3/17 | 0.6 | 0 | 1/11/18 | 0 | 2 |
| 4/20/17 | 0.24 | 0 | 9/6/17 | 0.44 | 0 | 1/12/18 | 0.69 | 0 |
| 4/21/17 | 0.27 | 0 | 9/19/17 | 0.19 | 0 | 1/13/18 | 0.11 | 0 |
| 4/25/17 | 0.64 | 0 | 10/8/17 | 0.37 | 0 | 1/17/18 | 0.17 | 0.1 |
| 4/26/17 | 0.28 | 0 | 10/9/17 | 0.23 | 0 | 1/23/18 | 0.31 | 0 |
| 5/5/17 | 2.27 | 0 | 10/24/17 | 0.13 | 0 | 1/28/18 | 0.27 | 0 |
| 5/13/17 | 1.74 | 0 | 10/29/17 | 2.78 | 0 | 1/30/18 | 0.06 | 1.2 |
| 5/22/17 | 0.64 | 0 | 10/30/17 | 0.16 | 0 | 2/2/18 | 0.18 | 0 |
| 5/25/17 | 0.87 | 0 | 11/5/17 | 0.1 | 0 | 2/4/18 | 1.01 | 0 |
| 5/26/17 | 0.12 | 0 | 11/7/17 | 0.6 | 0 | 2/7/18 | 0.85 | 0.6 |
| 5/29/17 | 0.16 | 0 | 11/16/17 | 0.78 | 0 | 2/10/18 | 0.53 | 0 |
| 6/14/17 | 0.5 | 0 | 11/18/17 | 0.12 | 0 | 2/11/18 | 1.28 | 0 |
| 6/17/17 | 1.26 | 0 | 11/19/17 | 0.23 | 0 | 2/14/18 | 0.1 | 0 |
| 6/19/17 | 1.22 | 0 | 11/22/17 | 0.16 | 0 | 2/15/18 | 0.14 | 0 |
| 6/24/17 | 1.12 | 0 | 12/5/17 | 0.69 | 0 | 2/16/18 | 0.11 | 0 |
| 6/27/17 | 0.16 | 0 | 12/9/17 | 0.34 | 4.6 | 2/17/18 | 0.6 | 3.9 |
| 7/3/17 | 0.12 | 0 | 12/10/17 | 0 | 3.9 | 2/18/18 | 0.02 | 3.1 |
| 7/7/17 | 2.14 | 0 | 12/11/17 | 0 | 1.2 | 2/22/18 | 0.11 | 0 |
| 7/14/17 | 0.47 | 0 | 12/14/17 | 0.07 | 1.2 | 2/25/18 | 0.77 | 0 |
| 7/22/17 | 0.52 | 0 | 12/15/17 | 0.13 | 1.4 | 3/1/18 | 0.42 | 0 |
| 7/24/17 | 0.9 | 0 | 12/16/17 | 0 | 1.2 | 3/2/18 | 1.76 | 0 |
| 8/4/17 | 0.75 | 0 | 12/23/17 | 0.54 | 0 | 3/7/18 | 0.9 | 1.7 |
| 8/5/17 | 0.16 | 0 | 12/25/17 | 0.22 | 0 | 3/8/18 | 0 | 1.2 |
| 8/7/17 | 0.43 | 0 | 1/4/18 | 0.51 | 7.4 | 3/13/18 | 0.22 | 0.2 |
| 8/12/17 | 0.16 | 0 | 1/5/18 | 0 | 7.1 | 3/21/18 | 0.63 | 8.7 |
| 8/15/17 | 0.44 | 0 | 1/6/18 | 0 | 7.1 | 3/22/18 | 0.01 | 7.9 |
| 8/18/17 | 0.91 | 0 | 1/7/18 | 0 | 7.1 | 4/2/18 | 0.55 | 5.5 |
| 8/22/17 | 0.23 | 0 | 1/8/18 | 0 | 7.1 | 4/3/18 | 0.27 | 1.2 |
| 8/29/17 | 0.31 | 0 | 1/9/18 | 0 | 3.9 | 4/4/18 | 0.12 | 0 |

Notice of Violation and Intent to File Suit
February 10, 2022
Page 15 of 21

| Date | | | Date | | | Date | | |
|---|---|---|---|---|---|---|---|---|
| 4/15/18 | 0.36 | 0 | 8/4/18 | 1.34 | 0 | 11/25/18 | 0.66 | 0 |
| 4/16/18 | 2.5 | 0 | 8/9/18 | 0.57 | 0 | 11/26/18 | 0.86 | 0 |
| 4/19/18 | 0.15 | 0 | 8/11/18 | 1.95 | 0 | 12/2/18 | 0.8 | 0 |
| 4/25/18 | 0.51 | 0 | 8/13/18 | 0.61 | 0 | 12/14/18 | 0.1 | 0 |
| 4/26/18 | 0.17 | 0 | 8/14/18 | 0.58 | 0 | 12/15/18 | 0.14 | 0 |
| 4/29/18 | 0.15 | 0 | 8/17/18 | 0.61 | 0 | 12/16/18 | 1.29 | 0 |
| 5/10/18 | 0.19 | 0 | 8/19/18 | 0.13 | 0 | 12/20/18 | 0.24 | 0 |
| 5/12/18 | 0.2 | 0 | 8/22/18 | 0.28 | 0 | 12/21/18 | 1.69 | 0 |
| 5/15/18 | 0.44 | 0 | 9/6/18 | 0.22 | 0 | 12/28/18 | 1.13 | 0 |
| 5/16/18 | 0.42 | 0 | 9/9/18 | 0.28 | 0 | 12/31/18 | 1.31 | 0 |
| 5/17/18 | 0.24 | 0 | 9/10/18 | 0.94 | 0 | 1/5/19 | 0.45 | 0 |
| 5/19/18 | 0.64 | 0 | 9/12/18 | 0.12 | 0 | 1/8/19 | 0.21 | 0 |
| 5/22/18 | 0.21 | 0 | 9/13/18 | 0.14 | 0 | 1/19/19 | 0.34 | 0 |
| 5/23/18 | 0.21 | 0 | 9/18/18 | 1.99 | 0 | 1/20/19 | 1 | 0 |
| 5/27/18 | 0.53 | 0 | 9/25/18 | 1.13 | 0 | 1/24/19 | 1.48 | 0 |
| 6/3/18 | 0.3 | 0 | 9/26/18 | 0.15 | 0 | 1/29/19 | 0.27 | 0 |
| 6/4/18 | 0.35 | 0 | 9/28/18 | 0.83 | 0 | 2/6/19 | 0.47 | 0 |
| 6/21/18 | 1.08 | 0 | 10/2/18 | 0.56 | 0 | 2/7/19 | 0.11 | 0 |
| 6/22/18 | 0.1 | 0 | 10/11/18 | 0.63 | 0 | 2/8/19 | 0.37 | 0 |
| 6/28/18 | 1.48 | 0 | 10/12/18 | 0.52 | 0 | 2/12/19 | 0.7 | 1.5 |
| 7/12/18 | 0.59 | 0 | 10/27/18 | 1.01 | 0 | 2/13/19 | 0.06 | 1.2 |
| 7/14/18 | 0.33 | 0 | 11/2/18 | 0.1 | 0 | 2/18/19 | 0.1 | 0 |
| 7/15/18 | 0.7 | 0 | 11/3/18 | 0.23 | 0 | 2/20/19 | 0.59 | 1.4 |
| 7/17/18 | 1.6 | 0 | 11/5/18 | 0.35 | 0 | 2/21/19 | 0.14 | 0 |
| 7/21/18 | 0.43 | 0 | 11/6/18 | 0.83 | 0 | 2/24/19 | 0.73 | 0 |
| 7/22/18 | 0.6 | 0 | 11/9/18 | 0.72 | 0 | 3/1/19 | 0.1 | 1.2 |
| 7/23/18 | 0.11 | 0 | 11/13/18 | 1.11 | 0 | 3/2/19 | 0.45 | 3.8 |
| 7/25/18 | 0.76 | 0 | 11/15/18 | 0.98 | 4.7 | 3/3/19 | 0.51 | 2.5 |
| 8/2/18 | 0.21 | 0 | 11/16/18 | 0.29 | 1.2 | 3/4/19 | 0.35 | 3.9 |
| 8/3/18 | 0.19 | 0 | 11/24/18 | 0.87 | 0 | 3/5/19 | 0 | 2 |

Notice of Violation and Intent to File Suit
February 10, 2022
Page 16 of 21

| Date | Value | Value | Date | Value | Value | Date | Value | Value |
|---|---|---|---|---|---|---|---|---|
| 3/10/19 | 0.66 | 0.1 | 6/20/19 | 0.91 | 0 | 12/2/19 | 0.4 | 0.3 |
| 3/15/19 | 0.27 | 0 | 6/21/19 | 0.54 | 0 | 12/9/19 | 1.8 | 0 |
| 3/21/19 | 0.69 | 0 | 6/25/19 | 0.42 | 0 | 12/10/19 | 0.17 | 0 |
| 3/22/19 | 0.53 | 0 | 7/11/19 | 0.72 | 0 | 12/11/19 | 0.29 | 1.2 |
| 4/5/19 | 0.23 | 0 | 7/17/19 | 2.67 | 0 | 12/13/19 | 1.01 | 0 |
| 4/8/19 | 0.25 | 0 | 7/18/19 | 0.32 | 0 | 12/14/19 | 1.13 | 0 |
| 4/12/19 | 0.48 | 0 | 7/22/19 | 1.24 | 0 | 12/17/19 | 0.9 | 0 |
| 4/13/19 | 0.28 | 0 | 7/23/19 | 0.52 | 0 | 12/29/19 | 0.29 | 0 |
| 4/15/19 | 0.78 | 0 | 7/31/19 | 0.58 | 0 | 12/30/19 | 0.49 | 0 |
| 4/19/19 | 0.1 | 0 | 8/3/19 | 0.12 | 0 | 1/3/20 | 0.14 | 0 |
| 4/20/19 | 0.58 | 0 | 8/7/19 | 0.62 | 0 | 1/4/20 | 0.24 | 0 |
| 4/22/19 | 0.29 | 0 | 8/8/19 | 0.1 | 0 | 1/6/20 | 0.02 | 1.2 |
| 4/23/19 | 0.1 | 0 | 8/18/19 | 0.59 | 0 | 1/16/20 | 0.12 | 0 |
| 4/26/19 | 1.1 | 0 | 8/21/19 | 0.35 | 0 | 1/18/20 | 0.18 | 1.9 |
| 4/27/19 | 0.11 | 0 | 8/22/19 | 1.18 | 0 | 1/25/20 | 0.78 | 0 |
| 5/3/19 | 0.13 | 0 | 8/28/19 | 0.1 | 0 | 2/6/20 | 0.56 | 0 |
| 5/5/19 | 1.33 | 0 | 9/2/19 | 0.51 | 0 | 2/7/20 | 0.29 | 0 |
| 5/12/19 | 1.22 | 0 | 10/2/19 | 0.21 | 0 | 2/10/20 | 0.41 | 0 |
| 5/13/19 | 0.59 | 0 | 10/3/19 | 0.23 | 0 | 2/11/20 | 0.26 | 0 |
| 5/14/19 | 0.2 | 0 | 10/9/19 | 0.54 | 0 | 2/12/20 | 0.13 | 0 |
| 5/23/19 | 0.48 | 0 | 10/16/19 | 1.71 | 0 | 2/13/20 | 0.39 | 0 |
| 5/26/19 | 0.25 | 0 | 10/20/19 | 0.37 | 0 | 2/25/20 | 0.13 | 0 |
| 5/28/19 | 0.19 | 0 | 10/22/19 | 0.46 | 0 | 2/27/20 | 0.45 | 0 |
| 5/29/19 | 0.83 | 0 | 10/27/19 | 1.41 | 0 | 3/3/20 | 0.29 | 0 |
| 5/30/19 | 0.8 | 0 | 10/29/19 | 0.1 | 0 | 3/6/20 | 0.14 | 0 |
| 6/2/19 | 0.39 | 0 | 10/31/19 | 0.39 | 0 | 3/13/20 | 0.27 | 0 |
| 6/10/19 | 0.78 | 0 | 11/18/19 | 0.43 | 0 | 3/17/20 | 0.15 | 0 |
| 6/11/19 | 0.37 | 0 | 11/19/19 | 0.2 | 0 | 3/19/20 | 1.02 | 0 |
| 6/13/19 | 0.65 | 0 | 11/24/19 | 0.72 | 0 | 3/23/20 | 1.44 | 0 |
| 6/18/19 | 0.63 | 0 | 12/1/19 | 0.56 | 0.2 | 3/28/20 | 0.42 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4/8/20 | 0.23 | 0 | 8/19/20 | 0.14 | 0 | 12/20/20 | 0.01 | 5.1 |
| 4/9/20 | 0.26 | 0 | 8/25/20 | 0.36 | 0 | 12/21/20 | 0 | 3.9 |
| 4/13/20 | 1.72 | 0 | 8/27/20 | 0.43 | 0 | 12/22/20 | 0 | 2 |
| 4/18/20 | 0.2 | 0 | 9/1/20 | 0.18 | 0 | 12/23/20 | 0 | 1.2 |
| 4/21/20 | 0.33 | 0 | 9/2/20 | 0.11 | 0 | 12/24/20 | 0.17 | 0 |
| 4/23/20 | 0.13 | 0 | 9/3/20 | 1.16 | 0 | 12/25/20 | 0.74 | 0 |
| 4/24/20 | 0.48 | 0 | 9/10/20 | 1.43 | 0 | 12/31/20 | 0.53 | 0 |
| 4/30/20 | 0.87 | 0 | 9/29/20 | 0.31 | 0 | 1/1/21 | 0.66 | 0 |
| 5/1/20 | 0.22 | 0 | 9/30/20 | 0.88 | 0 | 1/3/21 | 0.16 | 0.1 |
| 5/8/20 | 0.38 | 0 | 10/12/20 | 0.95 | 0 | 1/15/21 | 0.36 | 0 |
| 5/11/20 | 0.1 | 0 | 10/13/20 | 0.26 | 0 | 1/16/21 | 0.79 | 0 |
| 5/23/20 | 0.33 | 0 | 10/16/20 | 1.43 | 0 | 1/31/21 | 0.05 | 1.5 |
| 6/3/20 | 0.19 | 0 | 10/28/20 | 0.13 | 0 | 2/1/21 | 0.86 | 11.7 |
| 6/4/20 | 0.14 | 0 | 10/29/20 | 1.59 | 0 | 2/2/21 | 0.1 | 13 |
| 6/5/20 | 0.27 | 0 | 10/30/20 | 0.65 | 0 | 2/3/21 | 0 | 13 |
| 6/6/20 | 0.11 | 0 | 11/1/20 | 0.43 | 0 | 2/4/21 | 0 | 9.8 |
| 6/27/20 | 0.25 | 0 | 11/11/20 | 0.63 | 0 | 2/5/21 | 0.06 | 7.9 |
| 7/3/20 | 0.36 | 0 | 11/12/20 | 0.28 | 0 | 2/6/21 | 0 | 5.9 |
| 7/10/20 | 2.45 | 0 | 11/13/20 | 0.16 | 0 | 2/7/21 | 0.39 | 4.4 |
| 7/22/20 | 0.84 | 0 | 11/15/20 | 0.13 | 0 | 2/8/21 | 0 | 7.9 |
| 7/24/20 | 0.28 | 0 | 11/23/20 | 0.68 | 0 | 2/9/21 | 0.01 | 7.9 |
| 7/31/20 | 0.56 | 0 | 11/26/20 | 0.88 | 0 | 2/10/21 | 0 | 7.1 |
| 8/3/20 | 0.35 | 0 | 11/30/20 | 1.23 | 0 | 2/11/21 | 0.1 | 7.1 |
| 8/4/20 | 0.45 | 0 | 12/4/20 | 0.13 | 0 | 2/12/21 | 0 | 7.1 |
| 8/7/20 | 0.44 | 0 | 12/5/20 | 1.01 | 0 | 2/13/21 | 0 | 5.9 |
| 8/12/20 | 1.49 | 0 | 12/14/20 | 0.23 | 0 | 2/14/21 | 0 | 5.1 |
| 8/13/20 | 0.11 | 0 | 12/16/20 | 0.35 | 5.6 | 2/15/21 | 0.01 | 3.9 |
| 8/16/20 | 0.13 | 0 | 12/17/20 | 0.34 | 9.1 | 2/16/21 | 0.85 | 3.1 |
| 8/17/20 | 0.84 | 0 | 12/18/20 | 0 | 5.9 | 2/17/21 | 0 | 2 |
| 8/18/20 | 0.13 | 0 | 12/19/20 | 0 | 5.9 | 2/18/21 | 0.32 | 3.1 |

Notice of Violation and Intent to File Suit
February 10, 2022
Page 18 of 21

| Date | | | Date | | | Date | | |
|------|--|--|------|--|--|------|--|--|
| 2/19/21 | 0.1 | 3.1 | 6/8/21 | 0.47 | 0 | 9/23/21 | 1.11 | 0 |
| 2/20/21 | 0 | 3.9 | 6/14/21 | 0.1 | 0 | 9/24/21 | 0.27 | 0 |
| 2/21/21 | 0 | 3.1 | 6/19/21 | 0.11 | 0 | 9/28/21 | 0.1 | 0 |
| 2/22/21 | 0.56 | 2 | 6/22/21 | 0.17 | 0 | 10/4/21 | 0.11 | 0 |
| 2/23/21 | 0.01 | 1.2 | 6/30/21 | 0.61 | 0 | 10/10/21 | 0.11 | 0 |
| 2/27/21 | 0.47 | 0 | 7/1/21 | 0.72 | 0 | 10/16/21 | 0.16 | 0 |
| 2/28/21 | 0.29 | 0 | 7/2/21 | 0.86 | 0 | 10/25/21 | 0.4 | 0 |
| 3/1/21 | 0.15 | 0 | 7/3/21 | 0.19 | 0 | 10/26/21 | 2.48 | 0 |
| 3/18/21 | 0.55 | 0 | 7/6/21 | 0.21 | 0 | 10/27/21 | 0.14 | 0 |
| 3/19/21 | 0.1 | 0 | 7/8/21 | 0.95 | 0 | 10/29/21 | 0.34 | 0 |
| 3/24/21 | 1.31 | 0 | 7/9/21 | 1.81 | 0 | 10/30/21 | 0.16 | 0 |
| 3/28/21 | 0.6 | 0 | 7/12/21 | 0.6 | 0 | 11/12/21 | 0.35 | 0 |
| 3/31/21 | 0.37 | 0 | 7/17/21 | 0.53 | 0 | 11/13/21 | 0.23 | 0 |
| 4/11/21 | 0.4 | 0 | 7/21/21 | 0.16 | 0 | 12/6/21 | 0.44 | 0 |
| 4/12/21 | 0.49 | 0 | 7/25/21 | 0.44 | 0 | 12/11/21 | 0.14 | 0 |
| 4/15/21 | 0.92 | 0 | 7/26/21 | 1.38 | 0 | 12/22/21 | 0.16 | 0 |
| 4/21/21 | 0.27 | 0 | 7/28/21 | 0.2 | 0 | 12/24/21 | 0.02 | 1.2 |
| 4/25/21 | 0.5 | 0 | 7/29/21 | 0.26 | 0 | 12/25/21 | 0.16 | 0 |
| 5/3/21 | 0.33 | 0 | 8/8/21 | 0.32 | 0 | 12/29/21 | 0.16 | 0 |
| 5/4/21 | 0.3 | 0 | 8/10/21 | 0.4 | 0 | 1/1/22 | 0.76 | 0 |
| 5/5/21 | 0.29 | 0 | 8/19/21 | 0.29 | 0 | 1/5/22 | 0.24 | 0 |
| 5/9/21 | 0.45 | 0 | 8/21/21 | 1.18 | 0 | 1/7/22 | 0.33 | 9.7 |
| 5/28/21 | 1.14 | 0 | 8/22/21 | 2.3 | 0 | 1/8/22 | 0 | 5.1 |
| 5/29/21 | 0.46 | 0 | 8/23/21 | 0.81 | 0 | 1/9/22 | 0.11 | 3.1 |
| 5/30/21 | 0.81 | 0 | 8/27/21 | 1.34 | 0 | 1/16/22 | 0.36 | 0.6 |
| 6/3/21 | 0.31 | 0 | 9/1/21 | 6.8 | 0 | 1/17/22 | 1.06 | 0 |
| 6/4/21 | 0.67 | 0 | 9/9/21 | 0.29 | 0 | 1/20/22 | 0.25 | 0.3 |

Notice of Violation and Intent to File Suit
February 10, 2022
Page 19 of 21

The above violations are ongoing, and Riverkeeper will include additional violations as information and data become available.

Pascap is liable for the above-described violations occurring prior to the date of this letter and for every day after the date of this letter that these violations continue.  In addition to the violations set forth above, this Notice covers all violations of the CWA evidenced by information that becomes available after the date of this Notice of Intent to File Suit.[45]  These violations are ongoing, and, barring full compliance with the permitting requirements of the CWA, these violations will continue.

## VI.

## RELIEF REQUESTED

Riverkeeper will ask the court to order Pascap to comply with the CWA, to pay penalties, and to pay Riverkeeper's costs and legal fees.

First, Riverkeeper will seek declaratory relief and injunctive relief to prevent further violations of the Clean Water Act pursuant to Sections 505(a) and (d) and such other relief as permitted by law.

Second, pursuant to Section 309(d) of the CWA,[46] each separate violation of the CWA subjects Pascap to a penalty not to exceed $59,973 per day for each violation.[47]  Riverkeeper will seek the full penalties allowed by law.

Third and lastly, pursuant to Section 505(d) of the CWA, Riverkeeper will seek recovery of its litigation fees and costs (including reasonable attorney and expert witness fees) associated with this matter.[48]

## VII.

## PERSONS GIVING NOTICE

The full name, address, and telephone number of the persons giving notice are as follows:

Riverkeeper, Inc.

---

[45] *See, e.g. Public Interest Research Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1248-49 (3d Cir. 1995) (a notice that adequately identifies specific violations to a potential defendant also covers repeated and related violations that the plaintiff learns of later. "For example, if a permit holder has discharged pollutant 'x' in excess of the permitted effluent limit five times in a month but the citizen has learned only of four violations, the citizen will give notice of the four violations of which the citizen then has knowledge but should be able to include the fifth violation in the suit when it is discovered.").

[46] 33 U.S.C. § 1319(d); *see also* 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

[47] 40 C.F.R. §§ 19.2, 19.4.

[48] 33 U.S.C. § 1365(d).

Notice of Violation and Intent to File Suit
February 10, 2022
Page 20 of 21


20 Secor Road
Ossining, NY 10562
(914) 478-4501
Attn: Mike Dulong


## VIII.

## IDENTIFICATION OF COUNSEL

Riverkeeper is represented by legal counsel in this matter.  The name, address, and telephone number of Riverkeeper's attorneys are:

Edan Rotenberg, Esq.
Douglas Chermak, Esq.
Benjamin Pierce, Esq.
Super Law Group, LLC
110 Wall Street
New York, New York 10005
(212) 242-2355


## XI.

## CONCLUSION

The foregoing provides more than sufficient information to permit Pascap to identify the specific standard, limitation, or order alleged to have been violated, the activities alleged to constitute violations, the person or persons responsible for the alleged violations, the locations of the alleged violation, the date or dates of such violations, and the full name, address, and telephone number of the person giving notice.[49]

Riverkeeper requests Pascap to send a copy of its SWPPP to the undersigned attorney.[50] Riverkeeper nonetheless encourage Pascap to begin examining ways it can improve its SWPPP in order to comply with the General Permit.  However, Riverkeeper ask that Pascap please inform the undersigned attorney of any such efforts, so that Riverkeeper can work with Pascap to avoid disputes over the contents of the SWPPP.[51]

---

[49] 40 C.F.R. §§ 135.3(a), 254.3(a).

[50] Note that under Part III.C.2 of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within 14 days of receipt of a written request."

[51] Riverkeeper will not send a new notice letter in response to any effort Pascap makes to come into compliance with the Clean Water Act after receiving this letter, for example, by re-developing a SWPPP.  The federal courts have held that citizens sending a notice letter are not required to identify inadequacies in compliance documents that do not yet exist and are "not required to send a second notice letter in order to pursue specific claims regarding the inadequacies of [a defendant's] post-notice compliance efforts." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 920 (9th Cir. 2004). *See also Sw. Marine, Inc.*, 236 F.3d at 997 (9th Cir. 2000) ("subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant.  The defendant's later

Notice of Violation and Intent to File Suit
February 10, 2022
Page 21 of 21


During the sixty-day notice period, Riverkeeper is willing to discuss effective remedies for the violations noted in this letter that may avoid the necessity of protracted litigation.  If Pascap wishes to pursue such discussions, please contact the undersigned attorney immediately so that negotiations may be underway before the end of the sixty-day notice period.


Very truly yours,


Benjamin Pierce
Edan Rotenberg
Douglas Chermak
Super Law Group, LLC
110 Wall Street
New York, New York 10005
(212) 242-2355
*Attorneys for Riverkeeper*


cc:

Michael S. Regan, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Lisa Garcia, EPA Region 2 Administrator
Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

Basil Seggos, Commissioner
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-1011

---

changes . . . do not retroactively divest a district court of jurisdiction under 33 U.S.C. § 1365(b).”); *Anglebrook Ltd. P'ship*, 891 F. Supp. at 908 (S.D.N.Y. 1995) (plaintiff's notice letter based on inadequacies of defendant's original SWPPP held sufficient to establish court's jurisdiction, even though defendant later prepared a revised SWPPP).