UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RIVERKEEPER, INC., <br><br> Plaintiff, <br><br> v. <br><br> PASCAP CO., INC., <br><br> Defendant. | Case No. 22-cv-2999 (DLC) <br><br> ~~(PROPOSED)~~ <br> CONSENT DECREE |

WHEREAS, Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization organized under the laws of the state of New York, whose headquarters are in Ossining, New York, and whose mission is to protect and restore the Hudson River from source to sea, including waters in and around New York City, and to safeguard drinking water supplies, through advocacy rooted in community partnerships, science and law.

WHEREAS, Defendant Pascap Co, Inc. ("Pascap") is a corporation incorporated under the laws of the State of New York that owns and operates a scrap metal processing and recycling facility located at 4250 Boston Road, Bronx NY 10475 (the "Facility").

WHEREAS, Defendant allegedly discharges polluted stormwater runoff from the Facility into the waters of the United States, primarily directly to the Hutchinson River, a navigable water of the United States.

WHEREAS, the Facility operates under Standard Industrial Classification ("SIC") Codes of 5093 and 4212 and therefore any discharge of stormwater associated with activities at the Facility is subject to the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-17-004.

WHEREAS, Plaintiff sent a notice of intent to sue Defendant (the "Notice Letter") on February 10, 2022, and filed this action on April 12, 2022, alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act ("CWA") and seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs ("Complaint").

WHEREAS, Plaintiff alleged in its Complaint and Notice Letter that Defendant has violated and continues to violate CWA Sections 33 U.S.C. §§ 1311(a) and 1342; these allegations are denied by Defendant.

WHEREAS, without any concession or admission by Defendant that they have violated the Clean Water Act, or any concession or admission by Plaintiff that Defendant's implementation of the measures listed below will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Plaintiff and Defendant (collectively "the Parties" or individually "Party") agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation; and

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendant of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

### I. TERM OF CONSENT DECREE

1. The term "Effective Date," as used in this Consent Decree, shall mean the date upon which this Consent Decree is entered by the Court.

2. Unless an extension is agreed to in writing by the Parties, this Consent Decree shall terminate thirty months after the Effective Date, or through the conclusion of any proceeding to enforce this Decree or until the completion of any payment or affirmative duty required by this Decree, if occurring later than thirty months after the Effective Date (the "Termination Date").

### II. JURISDICTION AND VENUE

3. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). Plaintiff has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

4. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at the Facility and in the Hutchinson River watershed, navigable waters of the United States, that are located within this judicial district.

5. **Consent.** For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant. For purposes of this Decree, Defendant consents to venue in this judicial district.

2

## III. CONTROL MEASURES AND BEST MANAGEMENT PRACTICES

6. **Implemented Additional Control Measures.** Subsequent to Plaintiff's Complaint and prior to the Effective Date, Defendant has implemented the following additional control measures and best management practices ("BMPs") at the Facility.

    a. To the greatest extent feasible, Defendant is either covering or storing indoors all mill ready copper. All copper wire stripping will be conducted indoors.

    b. Labeled all petroleum storage tanks and waste oil tanks.

    c. Registered the Facility as an e-waste facility, which includes a requirement to keep e-waste indoors.

    d. Implemented the following enhancements to training procedures for Facility personnel:

        i. Prevention and clean-up of turnings and other lightweight materials from bulkheads at the Facility.

        ii. Prevention and clean-up of offsite discharges of foam waste from the West Parcel, particularly near the entrance.

        iii. Prevention and clean-up of metal materials, discarded booms, and trash that accumulates along the bulkhead in the West Parcel.

    e. Implemented a rain gauge.

    f. Moved logger on the West Parcel further from the bulkhead.

7. **Additional Control Measures.** Defendant will implement the stormwater pollution control measures set forth in Appendix A within thirty (30) days from the Effective Date, unless specified otherwise in Appendix A. Many of these measures are depicted in a site map of the Facility, attached hereto as Appendix B.

8. **Confirmation of New Structural Controls.** Within two (2) weeks of installation of each of the measures set forth in Appendix A, Defendant shall confirm the installation of said measures by submitting digital photos of those measures to Plaintiff.

9. **Revisions to SWPPP and NOI.** Within thirty (30) days of the Effective Date, Defendant shall update the Facility's Notice of Intent to Comply with the General Permit ("NOI") and the Stormwater Pollution Prevention Plan ("SWPPP") for the Facility to include Sector P (vehicle maintenance and/or fueling) and amend the Facility's SWPPP and Facility map to incorporate any additional changes, improvements, and best management practices set forth in or resulting from this Consent Decree. Defendant shall ensure that the SWPPP also contains the following revisions:

3

   a. Specification of the monthly maintenance frequency for the oil/water separator.

   b. Clarification that the oil/water separator discharges stormwater directly to the Hutchinson River and a description of the sampling procedure related to these discharges.

   c. Indication that turnings must be kept away from the Facility's bulkheads.

   d. Requirement to prevent offsite discharges of foam waste from the East Parcel.

   e. Need to ensure that no metal materials, discarded booms, and trash shall accumulate along the bulkhead in the West Parcel.

A copy of the amended SWPPP shall be provided to Plaintiff within ten (10) business days of completion.

10. **Implemented Storm Water Controls.** Defendant shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to existing housekeeping measures.

## IV.   MONITORING PROGRAM

11. **Additional Monitoring.** In addition to the inspections, monitoring, and reporting required under the General Permit and set forth in the attached SWPPP, Defendant agrees to perform the following additional monitoring described herein during the Term of this Decree, during business hours.

12. **Additional Observations During Rain Events**

   a. To ensure that the area slopes away from the water in the vicinity of the barge loading areas/bulkheads in the East and West Parcels, during at least two rain events during the first twelve (12) months that this Consent Decree is effective, Defendant shall take photos and videos of this area. The observations must be taken while it is still raining, in a continuous storm event having produced at least 1.5" of rain at the time of the observation. Documentation must include a video of the entire area along the perimeter of the Facility by the bulkheads, and an hourly record of the rain event from a rain gauge at the Facility.

      i. Defendant shall provide said photos and videos to Plaintiff within fourteen (14) days of the particular rain event.

      ii. If there are storm water discharges from these areas, Defendant shall propose corrective actions to eliminate said discharges within sixty (60) days.

    b. To verify that there are no offsite discharges from the entrances and the fueling area in the East Parcel, during at least two rain events during the first twelve (12) months that this Consent Decree is effective, Defendant shall take photos and videos of this area. The observations must be taken while it is still raining, in a continuous storm event having produced at least 1.5" of rain at the time of the observation. Documentation must include videos of all of the entrances and the fueling area, and an hourly record of the rain event from a rain gauge at the Facility.

        i. Defendant shall provide said photos and videos to Plaintiff within fourteen (14) days of the particular rain event.

        ii. If there are discharges from the fueling area or at any of the entrances, Defendant shall within sixty (60) days either propose a corrective action to eliminate said discharge(s) or shall resubmit the Facility's NOI and revise the Facility's SWPPP to include said outfall(s), and add said outfall(s) to the Facility's monitoring program.

        iii. If Defendant is required to submit a revised NOI, it shall provide Plaintiff a copy of said NOI within fourteen (14) days of submission to DEC

13. **Additional Monitoring of Roof Discharges.** Defendant shall perform the following analysis and potential enhancements related to discharges from roofs at the Facility:

    a. During the first twelve (12) months that this Consent Decree is effective, Defendant shall collect and analyze stormwater discharge from the roof drains at the Facility marked on Appendix B. Samples shall be analyzed for zinc.

    b. Within two (2) months subsequent to the first twelve (12) months that this Consent Decree is in effect, Defendant shall provide Plaintiff with a report evaluating the roof discharges at the Facility. This report shall include an evaluation of the efficiency of the system used to collect roof runoff, and the roof system's potential effect on the quality of overall stormwater discharges from the Facility outfall. If the report finds that the roof runoff is contributing to the concentrations of zinc in the Facility's stormwater discharges and zinc concentrations exceed the established benchmark, Defendant shall implement additional BMPs to address the exceedance. The report shall consider filters to the roof downspouts at the Facility, and coating the contributing roof surface(s) to reduce said zinc concentrations, as well as other BMPs proposed by Defendant. If the Defendant elects not to filter roof runoff directly or coat the roof surfaces, Defendant shall justify that decision by demonstrating why such actions are either not feasible technically or economically. The report shall include a reasonable schedule to implement said measures, with a maximum schedule of six (6) months from the report date, unless Defendant shows why such a schedule would be infeasible.

5

14. **Photographic Verification of Housekeeping BMPs.** To verify the Defendant is appropriately implementing source control and housekeeping BMPs, on three separate occasions three (3) months subsequent to the Effective Date and not later than fifteen (15) months after the effective date, Plaintiff may contact Defendant and request that Defendant shall take digital photos be taken as follows:

    a. On each occasion, Plaintiff shall contact Defendant either James Capasso or Carl Bencivengo via telephone between 9 am and 12 pm on a weekday that the Facility is open to request photos.

    b. On said occasion, Defendant shall take photos and videos of the following areas at the Facility:

        i. East Parcel in the vicinity of the bulkhead
        ii. West Parcel in the vicinity of the bulkhead
        iii. The inside and outside of the entrance to the West Parcel.

    c. Defendant shall collect photos within two (2) hours of receiving Plaintiff's request. Defendant shall ensure that the photos/videos contain appropriate time/date stamps.

    d. Within seven (7) days, Defendant shall provide a copy of said photos/videos to Plaintiff.

15. **Enhanced Sampling Frequency.** During each quarter of the term of this Consent Decree, Defendant shall collect and analyze storm water discharges from one qualifying storm event.

16. **Additional Parameters to Monitor.** In addition to the parameters the Facility is required to monitor pursuant to the General Permit and its SWPPP, during 2023 and 2024, the Facility shall additionally analyze the storm water discharges at the Facility for dissolved fractions of copper, lead, and zinc.

17. **Sampling Methodology.** Defendant will take samples at each sampling point in a manner that is consistent with the requirements and protocols set forth in the General Permit. Defendant shall report this sampling as part of the stormwater monitoring required by the General Permit.

18. **Recordkeeping.** Defendant will comply with the reporting and recordkeeping requirements of the General Permit. Defendant shall maintain written documentation at the Facility describing all inspections and assessments required under applicable provisions of the General Permit or of this Decree.

19. **Results Sent to Plaintiff.** Defendant will send to Plaintiff a copy of every inspection record and sampling result taken during the Term of this Decree once per calendar year,

no later than February 1 of the following year or on the last day during which this Decree is in effect.

20. **Provision of Documents to Plaintiff.** During each full year of the Term of this Decree, Defendant shall provide Plaintiff with electronic or paper copies of any documents or correspondence related to discharges of pollution from the Facility to waterbodies or sewers of any kind or Clean Water Act compliance regarding the Facility submitted to any governmental agency (including upload to any government agency-maintained website) no later than February 1 of the following year of submission of the documents or correspondence to said agency. This includes, but is not limited to:

    a. Documents and correspondence related to Defendant's SPDES/NPDES permit coverage at the Facility;
    b. Annual reports including the Annual Certification Report required under the General Permit;
    c. Monitoring or sampling data;
    d. Revisions to the SWPPP;
    e. Data related to discharges of industrial wastewater or industrial stormwater to the sanitary sewer system, if any (at this time Defendant has no such discharges);
    f. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer; and
    g. Documents relating to inspections conducted by any governmental agency that relate to industrial wastewater or industrial stormwater.

## V. OVERSIGHT COMPLIANCE

21. **Preparation of Action Plan.** If any of the Facility's storm water sampling results during either the first or second twelve (12) month period subsequent to the implementation of all measures set forth in Appendix A indicate that the analytical results for a particular parameter within that year exceed the applicable benchmark monitoring cutoff concentrations in the General Permit, Defendant agrees to take reasonable responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples. In furtherance of improving its storm water management practices, Defendant shall prepare a written statement ("Action Plan") discussing:

    a. Identification of any constituent that experienced an exceedance;

    b. Explanation of the possible cause(s) and/or source(s) of the exceedance; and

    c. Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s), and the proposed dates that such actions will be taken. Responsive actions to be taken subsequent to the first twelve (12) month period must include hydro jetting of all subsurface conveyances at the

> Facility. When performing hydro jetting, Defendant must ensure that no water from the process be discharged offsite.

Such Action Plan shall be e-mailed to Plaintiff not later than two (2) months subsequent to the completion of each twelve (12) month period subsequent to the to the implementation of all measures set forth in Appendix A during each year of this Consent Decree in which there are any analytical results that exceed the applicable benchmark monitoring cutoff concentrations.

22. **Meet and Confer Process.** Upon receipt of the Action Plan, Plaintiff may review and comment on any identified or omitted additional measures. If requested by Plaintiff within thirty (30) days of receipt of such Action Plan, Plaintiff and Defendant shall meet and confer to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the benchmark levels. If requested by Plaintiff within thirty (30) days of receipt of such Action Plan, Plaintiff and Defendant shall meet and confer and potentially conduct a site inspection within sixty (60) days after the due date of the Action Plan to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the benchmark values. If within thirty (30) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Settling Parties shall engage in the dispute resolution procedures pursuant to Section X below.

23. Any concurrence or failure to object by Plaintiff with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by Defendant shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater into compliance with applicable effluent limitations requiring dischargers to minimize the discharge of pollutants and the applicable water quality based effluent limitations set forth in the General Permit.

24. **Annual Site Inspection.** Defendant agrees to grant site access to representatives of Plaintiff, including consultants acting on its behalf, to inspect the Facility for compliance with the General Permit and the terms of this Consent Decree during each year the Consent Decree is in effect. The Site Inspection shall occur during normal business hours and Plaintiff shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours' notice prior to a Site Inspection during wet weather, and seventy-two (72) hours' notice prior to a Site Inspection during dry weather. Notice will be provided by electronic mail. During the Site Inspection, Defendant shall allow Plaintiff and/or its representatives access to the Facility's SWPPP, storm water monitoring records, and nonprivileged reports and data related to storm water monitoring at the Facility. During the Wet Weather inspection, Plaintiff's representatives may collect samples of storm water discharges. Plaintiff shall be permitted to take photographs and/or video recording during any Site Inspection pursuant to this paragraph. If Plaintiff takes photographs and/or video recording, Plaintiff shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection.

8

## VI. PAYMENTS

25. **Environmental Benefit Payment ("EBP").** In recognition of the good faith efforts by Defendant to comply with the General Permit and the Clean Water Act and in lieu of any payment that could have been assessed as a penalty if the matter were tried, Defendant shall pay the sum of fifty thousand dollars ($50,000), divided equally, to two organizations (the "EBP Recipients"), for use on projects relating to water quality improvement in the Hutchinson River Watershed and the adjacent portions of the New York Harbor. The first half of the payment ($25,000) shall be sent via certified mail, or similar service with tracking, within sixty (60) days of the Effective Date to the Hutchinson River Restoration Project, c/o Barbara Zahm, 88 Horton Street, City Island, NY 10464. The second half of the payment ($25,000) shall be sent via certified mail, or similar service with tracking, within one-hundred and twenty (120) days of the Effective Date to New York City Soil and Water Conservation District ("NYCSWCD"), 121 Sixth Avenue, Suite 501, New York, NY 10013. Defendant shall concurrently notify Plaintiff that payment has been sent and provide the tracking number, in writing. None of this payment shall be disbursed to Plaintiff.

26. **Stipulated Additional EBP.** Should Defendant fail to provide information or any required documentation to DEC or Plaintiff by the deadlines required by the General Permit or this Decree, Defendant shall make an additional payment of one-thousand dollars ($1,000) for each instance of failure to provide information and/or documentation and/or missed deadline. Payments shall be made to the EBP Recipients via certified check by certified mail, or similar service with tracking. Payment of each additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall concurrently notify Plaintiff, in writing, each time a payment is made and provide a copy of each check and the tracking number. None of these payments shall be disbursed to Plaintiff.

27. **Fees, Costs, and Expenses.** Defendant shall pay a sum of sixty-four thousand dollars ($64,000) as full and complete satisfaction of Plaintiff's claims for attorneys' fees and costs incurred to date, including investigative and expert costs. The payment has been placed in escrow with Defendant's attorney and will be sent to Plaintiff's attorney via certified mail, or similar service with tracking, within seven (7) business days of the Effective Date. Defendant shall concurrently notify Plaintiff that payment has been sent and provide the tracking number, in writing. The check shall be payable to "Super Law Group, LLC Attorney Trust – IOLA." Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiff.

28. **Compliance Oversight Fees and Costs.** Plaintiff will incur costs in order to monitor Defendant's compliance with this Decree. To help defray these costs, Defendant agrees to pay ten thousand dollars ($10,000). The payment has been placed in escrow with Defendant's attorney and will be transferred to Plaintiff's attorney within seven (7) business days of the Effective Date. The check shall be payable to "Super Law Group, LLC Attorney Trust – IOLA." Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiff. Plaintiff or their attorneys shall present to

Defendant an invoice for any payment they propose to take from this sum to cover compliance oversight fees and costs. Defendant shall have two (2) weeks from receipt of any such invoice to object to the sum claimed. If Defendant does not object, Plaintiff's attorneys shall draw down the trust account to pay the proposed sum. If Defendant objects, the Parties shall follow the Dispute Resolution Procedure set forth in Section X. Any funds not used during the Term of this Decree shall be paid to the EBP Recipients.

## VII. EFFECT OF DECREE

29. **Plaintiff's Release of Liability.** Upon Court approval and entry of this Consent Decree, Plaintiff covenants not to sue and releases Defendant (including its representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability related to stormwater at the Facility under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from noncompliance with the Clean Water Act occurring prior to the Effective Date, and (b) for any past violations of the Clean Water Act at the Facility alleged, or that could have been alleged in the Complaint. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

30. **Reservation.** Plaintiff does not waive its rights to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Decree.

31. **Defendant's Releases of Liability.** Defendant releases and discharges Plaintiff and its representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with this action.

32. **Compliance with Law.** Plaintiff does not by consent to the Decree warrant or aver in any manner that Defendant's compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

33. **Impossibility of Performance.** Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the others in writing within seven (7) days of the date that the failure becomes apparent and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. If the Parties cannot timely agree upon the terms of such a stipulation, either shall have the right to seek intervention of the Court.

34. **Defendant's Right to Modify its Facility in Accordance with Applicable Law.** Nothing contained in this Decree shall limit the Defendant's right to modify the operation of the Facility, including without limitation: seeking coverage under an individual SPDES permit rather than the General Permit, modifying the Facility to eliminate and stormwater discharges either by construction of a detention pond, infiltration into the ground, or connection to a POTW. Notwithstanding, those sections of this Decree relating to discharge of fugitive materials to the Hutchinson River shall remain in effect and any sections applicable to stormwater discharge shall be applicable to the relevant permit or regulatory requirements.

## VIII.   FEDERAL REVIEW OF DECREE

35. **Review by United States.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Attorney General of the United States and the Administrator of the EPA. Therefore, upon signing of this decree by the Parties, Plaintiff shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

36. **Entry of Order.** Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## IX.   MODIFICATION AND ENFORCEMENT OF DECREE

37. **Modification in Writing.** This Decree may be modified only upon written consent of the Parties and the approval of the Court.

38. **Continuing Jurisdiction of the Court.** The United States District Court for the Southern District of New York shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

## X.   DISPUTE RESOLUTION PROCEDURE

39. **Meet and Confer.** Except as specifically noted herein, any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following

11

procedure. The Parties agree to first meet and confer (telephonically or via video) in good faith to resolve any dispute arising under this Consent Decree within thirty (30) days of receiving written notification of a request for such a meeting. During the meet and confer proceeding, the Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond thirty (30) days.

40. **Settlement Meeting/Motion.** In the event that such disputes cannot be resolved within twenty-one (21) days of the Parties meeting and conferring, the Parties may agree to seek a settlement meeting before the Magistrate Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, or are unable to obtain a settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. The motion shall set forth the nature of the dispute and a proposal for its resolution.

41. **Fee Awards.** In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs. The relevant provisions of the Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.

## XI. MISCELLANEOUS PROVISIONS

42. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

43. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) if e-mailed, when acknowledged by the addressee. Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Plaintiff shall be sent to: | Notice for all Defendant shall be sent to: |
|---|---|
| Douglas Chermak<br>doug@superlawgroup.com<br>Super Law Group, LLC<br>222 Broadway, 22nd Floor<br>New York, NY 10038<br><br>Notices sent to the individuals listed above at the address listed above shall be deemed as notice to all Plaintiff. | Paul Casowitz<br>pcasowitz@sprlaw.com<br>and<br>Kayley McGrath<br>kmcgrath@sprlaw.com<br><br>Sive, Paget & Riesel PC<br>560 Lexington Avenue<br>New York, New York 10022<br><br>Notices sent to the individuals listed above at the address listed above shall be deemed as notice to all Defendant. |

44. **Authorization.** Each person signing this Decree represents and warrants that they have been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

45. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

46. **Transfer of Ownership.** Defendant shall notify Plaintiff prior to any transfer of ownership or control of the Facility to a non-Party. Defendant agrees that as a condition of transfer of ownership or control of the Facility, the new owner or operator shall be informed in writing of this Decree and of its requirements to comply with the Clean Water Act.

47. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

48. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

49. **Counterparts.** This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such

13

completely executed counterparts shall be sufficient proof of this Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree. Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

50. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. **Changes to the General Permit.** Defendant will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Decree. If new or revised benchmark monitoring cutoff concentrations or effluent limitations (numeric or non-numeric) become applicable, compliance with them is required and any exceedance of a new or modified benchmark monitoring cutoff concentration or effluent limitation will have the same effect as any exceedance of an existing benchmark monitoring cutoff concentration or effluent limitation.

52. **Publicity.** Any public statement made by Defendant in any press release, in any oral or written material promoting Defendant's environmental or charitable practices or record, or in Defendant's Annual Reports, that refers to Defendant's payments, obligations, or improvements to practices, equipment, or facilities under this Decree shall state that the payments, purchases, changes, improvements or similar "were made pursuant to the settlement of a Clean Water Act enforcement suit brought by Plaintiff."

Dated: 4/5/23

Pascap Co, Inc.

By: James Capasso
Title: President

Dated: 4/5/23

Riverkeeper, Inc.

By: Michael Dulong
Title: Senior Attorney

So ordered. Denise Cote
May 30, 2023

14

ENTERED and DATED this ___ day of _____, 2023

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Honorable Denise L. Cote
United States District Judge

# APPENDIX A: SCHEDULE

## Additional Control Measures (Section III of Consent Decree)

| Requirement | Deadline |
| --- | --- |
| 1. Implement a metal cage inside catch basin CB-2, surrounding the outflow pipe inside the basin. | Effective Date + 30 days |
| 2. Install MetalZorb media in the baskets in front of the outflow pipes in catch basins CB-1, CB-2, CB-3, CB-4, and CB-5. | Effective Date + 30 days |
| 3. Install Ultra-Drain Guard High Capacity Model filter with MetalZorb media at CB-6. | Effective Date + 30 days |
| 4. Implement a weekly inspection and maintenance schedule to verify that the filter socks surrounding the catch basins are properly situated and to replace them as needed. Inspections shall also be conducted in conjunction with heavy rainfall events. Defendant shall maintain a log of such inspections. | Effective Date + 30 days |
| 5. Implement metal plates in the West Parcel, the same practice used to prevent spillage when loading/unloading from barges in the East Parcel. | Effective Date + 30 days |
| 6. Fabricate a drip basin and place it under the logger in the West Parcel. Ensure that the basin is covered. | Effective Date + 30 days |

*The Effective Date is the date this Decree was entered by the Court.

## Other Requirements
(collected here for convenience only, provisions of agreement above control)

| Requirement | Section | Deadline |
| --- | --- | --- |
| Confirm implementation of measures in Appendix A | III | Within two weeks of installation of measures |
| Amend SWPPP; Provide copy | III | Effective Date + 30 days; + 10 days |

16

| Collect photos/videos of bulkheads/loading area in East and West Parcels during two sufficiently sized rain events. Provide copies of photos/videos. Implement potential corrective actions. | IV | Effective Date + 12 months; + 14 days; + 60 days |
| Collect photos/videos of entrances and fueling area in East Parcel during two sufficiently sized rain events. Provide copies of photos/videos. Potentially file updated NOI and revise SWPPP. | IV | Effective Date + 12 months |
| Collect and analyze roof discharges | IV | Effective Date + 12 months |
| Provide report analyzing roof discharges. | IV | Effective Date + 14 months |
| Photographic verification of housekeeping BMPs | IV | Effective Date + 15 months (*triggered by Plaintiff) |
| Collect quarterly storm water samples | IV | Life of Consent Decree |
| Analyze storm water samples for dissolved fractions of copper, lead, and zinc | IV | End of 2024 |
| Provide Plaintiff with inspection records and sampling results | IV | By February 1 of each year |
| Provide Plaintiff with agency correspondence and documents | IV | By February 1 of each year |
| Prepare and submit Action Plan | V | Potentially twice during life of Consent Decree, deadline determined based on implementation of measures in Appendix A |
| Payments | VI | Effective Date + 7 business days, 60 days, 120 days |

17